Luppie *v.* Winans.

MARY LUPPIE, appellant,

*v.*

DAVID R. WINANS et ux., respondents.

1. Although an order of the orphans court, granting letters of guardianship of an infant under fourteen, ought to have been set aside because no notice of the appointment had been given to the ward's mother and only surviving parent, yet if the application is afterwards fully heard in the presence of all the parties interested, such order will not be reversed ; nor will such order be reversed where it appears, on the merits, obviously for the infant's advantage that the person selected should be its guardian.

2. Under the statute as to the adoption of infants, the consent of the parent is absolutely necessary, where, as in this case, such parent is not hopelessly intemperate or insane, and has not abandoned the child, even though the child be under fourteen.

Appeal from decrees of Essex orphans court.

*Mr. Albert P. Condit,* for appellant.

*Mr. Cortlandt Parker,* for respondents.

THE ORDINARY.

The orphans court, on the application of David R. Winans, on his petition, appointed him guardian of the person and estate of Mary Luppie, an infant under the age of fourteen years. The appointment was made January 18th, 1882. On the 27th of the same month, Mary Luppie, mother of the infant, applied to the court to revoke the letters, and prayed that she herself might be appointed guardian. The infant had no property except her clothing, toys, books and other such articles, which had been provided for her by Mr. Winans or members of his family or their friends. Neither he nor any of his family was related to or in any way connected with her. The mother had been a servant in his family, and when her service there began she was a widow and had the child, which was the offspring of her and her de-

ceased husband. It was then a mere babe. It was taken by the family of Mr. Winans into their charge, with her consent, and they cared for it as their own, under what they regarded as a surrender of it to Mr. Winans, to be brought up as his own by adoption. The arrangement under which it was so taken and held by them was merely verbal. When the application of Mr. Winans for the letters of guardianship was made, the mother had denied Mr. Winans's right to the child, and she repudiated the agreement, claiming that it was merely an arrangement terminable at will on her part. On the 23d of the same month of January, three days after the appointment of Mr. Winans as guardian, he and his wife filed in the same court a joint petition, under the act of March 9th, 1877, " providing for the adoption of children " (*Rev. p. 1345*), praying that a decree might be made in accordance with the provisions of that act, declaring and adjudging that from the date thereof the name of the child should be changed to and be only Mabel Winans, and that the rights, duties, privileges and relations theretofore existing between the child and her parent should be in all respects at an end, except the right of inheritance; and that the rights, duties, privileges and relations between the child and the petitioners, as her parents by adoption, should thenceforth be in all respects the same, including the right of inheritance, as if she had been born to them in lawful wedlock, except only as otherwise provided in the act, with all other rights as by the act provided. The petition stated that Mr. Winans was the guardian of the child under the beforementioned letters; that as such guardian he thereby gave his written consent to the adoption ; that the child was about nine years old ; that her father was not living, to the knowlege or belief of the petitioners; that if he was living he had abandoned the child ever since it was six months old; that its mother was living and was then residing as a servant in a family in East Orange, in Essex county ; that the petitioners were upwards of sixty years of age, and were persons of good moral character and reputable standing in the community, and of ability to maintain and educate the child properly, having reference to the degree and condition in life of her parents ; that the best interests of

the child would be promoted by the adoption; that ever since she was about six months old she had been, except for short intervals, an inmate of the family of the petitioners, having been left with them by her mother with a view to their adopting her, and on an agreement that they should do so; and that the child had been since clothed, maintained and educated by the petitioners wholly at their own expense.

The grant of letters of guardianship to Mr. Winans was made without notice to the mother of the child. Her counsel obtained an order to show cause why the letters should not be revoked and letters granted to her. The application for the decree of adoption, and the order to show cause, came on for hearing at the same time. At the hearing and in the beginning of the proceedings, the counsel of the mother moved the court to revoke the letters of guardianship to Mr. Winans for want of notice. This motion the court denied, and proceeded under the order to show cause to hear testimony on the merits of the applications for guardianship and adoption. The result was, that by its decree of May 13th, 1882, it revoked, on the ground of want of notice, the letters which had been previously granted to Mr. Winans, denied the application of the mother, and again granted letters to Mr. Winans, and by its decree of the same date granted and declared the adoption. It was the duty of the court to grant the motion to revoke for want of notice when it was made, but its refusal to do so did not, under the circumstances, prejudice the appellant in any material respect. The opposing claims for guardianship were before the court for consideration under the order to show cause, and there is no substantial ground for complaint of want of notice as to the grant of letters to Mr. Winans which was made thereon, although the order to show cause only called on him to show cause why the letters granted to him should not be revoked and letters be granted to the mother, and did not call on her · to show cause against his application. He, however, is dead, and the guardianship granted to him is at an end. On the merits, I do not consider the action of the court in refusing the grant of letters to the mother erroneous under the circumstances. The child was committed by her to

the care of Mr. Winans, and it has lived for several years in his family, and has been educated by him and brought up in refinement.    Its interest would not be promoted by granting the guardianship to the mother.    In *Albert* v. *Perry, 1 McCart. 540,* it was said that in awarding guardianship the right of the mother, though it cannot be disregarded without justifiable cause, must be held in subordination to, and exercised in consistency with, the rights, the moral training and the highest welfare of the child.    And it was also said that the law gives no countenance to the idea that the moral and mental culture, the proper education and discipline of the child, are to be held in subordination to the legal rights of the parent.    It was also held in that case to be a circumstance entitled to very great consideration in determining to whom the guardianship should be granted, that the infant had never been, since her early infancy, under the care, control or custody of her mother, or been in any way interfered with or provided for by her, but that she had been under the care of her paternal grandfather and his family, to whose charge she was committed by the mother for a period of nearly eight years; that after the death of her grandparents she had continued under the care of her grandfather's family, including the paternal aunt, to whose guardianship she had been entrusted by the court by the decree under consideration, and that no objection was suggested to the mode of treatment which she had experienced, or to the care and control which had been exercised over her; that the interest of the infant could not be promoted by a change in her position, social relations, habits of life and mode of training at her then age, and that it was obviously for her best interests that she should remain where she was and where she had been, and was properly cared for and trained, until she should be at liberty to choose a guardian for herself.

As this matter stands before me, there is indeed now no claim to the guardianship in opposition to that of the mother, but I deem it best to give an opportunity for some proper person of Mr. Winans's immediate family to make application for letters, and such application may be made in this court.    The decree of

Luppie v. Winans.

May 13th, 1882, appointing Mr. Winans guardian and refusing to appoint the mother will be affirmed, but without costs.

But not so the decree of adoption. That stands on different grounds. The statute provides that if the child whom it is proposed to adopt is over fourteen years of age, its consent in writing duly acknowledged must be obtained and presented with the petition; also the written consent of the parent, or parents, if living; but if both be dead or unknown, or hopelessly intemperate or insane, or shall have abandoned the child, there must be the written consent of the legal guardian, duly acknowledged, and if there be no guardian then some discreet and suitable person must be appointed by the court as next friend of the child, whose consent to the adoption must be had. It is silent as to the prerequisites where the child is under fourteen. There was in this case not only no consent on the part of the mother to the adoption, but, on the contrary, active opposition to the proceedings. The father of the child was dead. The mother was "known," was neither "hopelessly intemperate" nor "insane." Nor had she abandoned the child in any sense. The petition alleged none of these things against her. It did not even allege that she was an improper person to have the care and education of the child. It alleged that she had for many years left the child with the petitioners under an agreement between her and them that they should adopt it; that was not by any means abandonment within the meaning of the statute. So far from deserting or abandoning the child in the sense of the statute, she was desirous of keeping it, notwithstanding that agreement, and her effort to regain possession of it was probably no small incentive to the institution of the proceedings under consideration. The court, by its order to show cause on the petition, ordered that notice of the application be given to her. The child was under fourteen years of age, and the court, as appears by the opinion, construed the statute as requiring no consent, either on the part of parent or child, to the adoption in such a case, but held that in such cases the statute confides the whole matter to the discretion of the orphans court, without regard to the wishes of either parent or child. This construction is entirely inad-

missible.  It would make the law liable to be the instrument of
the forcible transfer of one man's child to another person, in
spite of the parents' opposition, provided the court deems it ad-
vantageous for the child that the transfer be made.  The law
expressly gives to the decree of adoption the effect of severing
absolutely the legal ties between the parent and the child, and
putting at an end their reciprocal relations.  It declares that
from the date of the decree the rights, duties, privileges and
relations between the child and the parent shall be in all respects
at an end, except the right of inheritance, and transfers them all.
Such an intention as that which the construction under consider-
ation presumes, is not to be imputed to the legislature.  It can-
not be held to have contemplated any such disregard of the
natural rights of a parent—rights so fully recognized by our law
that it holds void at the will of the parent as against public
policy his own contract for the permanent transfer of those
rights, and will not enforce it except in the admitted exception of
apprenticeship, and where the principles of legal adoption are
part of the public policy.  *Schou. Dom. Rel. 343 ; Villareal* v.
*Mellish,* 2 *Swanst. 533 ; Regina* v. *Smith, 16 E. L. & E. 221 ;*
*People* v. *Mercein, 3 Hill 399 ; Mayne* v. *Baldwin, 1 Hal. Ch.*
*454 ; State* v. *Clover, 1 Harr. 419 ; Albert* v. *Perry, 1 McCart.*
*540.*  A just, and it seems to me an obvious and necessary
construction of our statute of adoption is, that if the child be
under fourteen there need be no consent on its part, but the con-
sent of the parent or parents, if there be any living, provided
they be known and not hopelessly intemperate or insane, and
have not abandoned the child, must be obtained.

It seems entirely manifest that in this case the welfare of the
child would be very greatly promoted by the adoption, especially
in view of the very handsome pecuniary provision which it was
said on the hearing Mr. Winans has made for it in his will, if
the decree of adoption stands.  That consideration, however,
while it makes decision painful, cannot affect my judgment as to
the legal validity of the decree.  I must hold it invalid.  It
will therefore be reversed, with costs.